IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**ALICESON ANDERSON**                                                                 **PLAINTIFF**

**v.**                                                           **CIVIL ACTION NO.: 3:26-cv-81-DPJ-ASH**

**IMMUNOTEK BIO CENTERS, LLC D/B/A**
**FREEDOM PLASMA DONATION CENTER**                                  **DEFENDANT**

**COMPLAINT**
**JURY TRIAL DEMANDED**

**COMES NOW** the Plaintiff, Aliceson Anderson, by and through her counsel, The Watson Law Firm, PLLC, brings this action to recover damages for violations of her rights pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, for retaliation, sex discrimination, and sexual harassment, against the Defendant, ImmunoTek Bio Centers, LLC d/b/a Freedom Plasma Donation Center. In support of this cause, the Plaintiff would show unto the Court the following facts to-wit:

**THE PARTIES**

1.     Plaintiff, Aliceson Anderson, is a female resident of Hinds County, Mississippi.

2.     Defendant, ImmunoTek Bio Centers, LLC d/b/a Freedom Plasma Donation Center, may be served with process by serving its registered agent, Corporate Creations Network, Inc., 7 Professional Pkwy #101, Hattiesburg, Mississippi 39402.

**JURISDICTION AND VENUE**

3.     This Court has federal question jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended.

4.     This Court has subject matter jurisdiction, and venue is proper in this Court.

1

5. Plaintiff filed a Charge of Discrimination against with the EEOC on February 24, 2025, a true and correct copy of which is attached as Exhibit "A." The EEOC issued a Notice of Right to Sue on January 8, 2026, a true and correct copy of which is attached as Exhibit "B." Plaintiff timely files this action within ninety (90) days of receipt of her Notice of Right to Sue.

## **STATEMENT OF FACTS**

6. Plaintiff is a 33-year-old female resident of Hinds County, Mississippi.

7. Plaintiff was hired on March 19, 2024, as a Physician Substitute at ImmunoTek Bio Centers, LLC (IBC).

8. Plaintiff was trained as a nurse, and in this job, she worked with customers who came to IBC to donate plasma.

9. On Feb 1, 2025, Plaintiff was working with a donor (Person A), preparing him for the plasma transfusion process, when he grazed his hand on Plaintiff's buttocks.

10. Thinking it was merely incidental contact, Plaintiff ignored it.

11. However, immediately after that, Person A groped Plaintiff forcefully from behind in her anal and vaginal area.

12. Shocked by the inappropriate action of the donor, Plaintiff grabbed his shirt by the collar and stated, "Don't you ever touch me like that again."

13. Plaintiff then reported the incident to Assistant Manager Dominique Holmes.

14. Although IBC has a policy that donors who exhibit inappropriate behaviors (including sexual assault/harassment) are to be expelled from the facility, Person A was not removed from the facility.

15. Instead, he was allowed to continue and finish the donation procedure.

16. Later the same day, February 1, 2025, Plaintiff reported the incident of sexual harassment to Center Manager Ashley Woodard.

17. On February 4, 2025, Plaintiff was asked to meet with Ms. Woodard and Quality Assurance Manager Jeremy Henderson.

18. During the meeting Ms. Woodard admitted that surveillance footage revealed that Person A first grazed his hand against Plaintiff's buttocks and then groped her forcefully in the anal and vaginal area, i.e., the footage showed Plaintiff was sexually assaulted.

19. Ms. Woodard went on to state, however, that since Plaintiff is a nurse, she should have handled the situation better and not grabbed the donor by his shirt.

20. For this reason, allegedly, Plaintiff was terminated.

21. On February 24, 2025, Plaintiff filed an EEOC Charge of sex discrimination, sex harassment, and retaliation.

22. On May 12, 2025, in response to Plaintiff's Charge, IBC submitted a Position Statement to the EEOC.

23. IBC's Position Statement alleges that, "Please note that the above duties [reference to a detailed list of the job duties of a Physician Substitute] carry with them an expectation of behavior from a healthcare professional, including emotional composure, the ability to maintain a calm and appropriate medical environment, as well as the ability to diffuse difficult situations or reactions to unfavorable situations or news. Here, Charging Party, did not manage her own emotions, did not remain calm or handle the situation in a professional manner or the expected manner. Rather, Charging Party responded with an unacceptable physical attack of the donor."

24. Plaintiff contends this allegation is disingenuous and misleading in its implication that Plaintiff handled the situation inappropriately.

25. As will be elaborated further below, while merely going about her professional duties, Plaintiff was forcefully groped from behind in her anal and vaginal area.

26. This egregious act was completely unprovoked and unanticipated.

27. Plaintiff was understandably shocked by the incident.

28. After initially withdrawing from the offender, she returned to him, grabbed his shirt by the collar and stated, "Don't you ever touch me like that again."

29. Given the gravity and inappropriateness of what had occurred, this was merely an assertive and completely appropriate response.

29. To allege that somehow Plaintiff "did not manage her emotions, did not remain calm" and "responded with an unacceptable physical attack of the donor" is not only a mischaracterization, but it is ludicrous and shamefully minimizing of the severity of the violation she experienced.

30. IBC's Position Statement alleges that when Person A's hands grazed against Plaintiff's buttocks, it was merely incidental contact.

31. Plaintiff contends it is true that initially Person A's hands grazed her buttocks.

32. As stated in her EEOC Charge, Plaintiff initially thought the contact was incidental and she ignored it.

33. IBC's Position Statement alleges that, "There was no forceful groping her forcefully from behind in her anal and vaginal area."

34. Plaintiff contends this allegation is categorically false.

35. After Person A grazed his hands across Plaintiff's buttocks, she initially assumed it was merely incidental contact, and she ignored it.

36. Person A then, however, forcefully groped her from behind in her anal and vaginal area.

37. IBC's Position Statement alleges that "Confidential Exhibit No.1 clearly establishes that Charging Party immediately forcefully and physically attacked the donor by forcefully grabbing him in the neck area. This all occurred in Bay 3."

38. Plaintiff contends this allegation is misleading and omits substantially relevant preceding context.

39. As stated above, Person A grazed Plaintiff's buttocks and followed up by groping her forcefully from behind.

40. At that point, Plaintiff was initially in shock and responded by walking away from where Person A was by the donation chair/bed.

41. After a few seconds, however, she experienced very understandable outrage that Person A had believed it acceptable to so flagrantly and egregiously violate her as he had.

42. Plaintiff then approached Person A, grabbed his shirt by the collar, and stated, "Don't you ever touch me like that again."

43. It is this final part of the interaction that is depicted by the Respondent's Confidential Exhibit No. 1.

44. The Respondent neglected to show the earlier parts of the incident, in which Person A grazed his hand against Plaintiff's buttocks and the groped her forcefully from

behind.

45. Since the photos were obtained as part of a video, a review of the full video will show the complete sequence of events.

46. IBC's Position Statement alleges that, "She did report the incident to Assistant Manager Dominique Holmes. Thereafter, Respondent promptly conducted an investigation . The investigation revealed that Charging Party attacked the Donor, which is strictly prohibited. Additionally, and the donor was "deferred" as explained below, the Donor was promptly classified as not allowed to donate at ImmunoTek."

47. Plaintiff contends, as she put in her initial EEOC Charge, that she reported the incident to Assistant Manager Dominique Holmes and a little later that same day to Ms. Woodward.

48. The Respondent alleges it "promptly conducted an investigation", yet it also alleges that "Center Manager [Ms. Woodward] was not on duty" that day and thus "the Donor was allowed to finish the donation that day, as the investigation could not be completed until Monday."

49. It is clear that the Respondent's own conclusions are self-contradictory here.

50. Plaintiff contends the Respondent was fully aware on February 1st of the events that occurred, but Respondent let a few days pass with the goal of altering the narrative to suggest that Plaintiff, with no clear motive, suddenly 'physically attacked' a donor.

51. IBC's Position Statement alleges that, "after the investigation, in an abundance of caution, even though it could not determine if the contact was intentional

6

and not just incidental, the Donor was promptly classified as not allowed to donate at ImmunoTek. Thus, effective February 4, 2025, the Donor was indefinitely "deferred," i.e. disqualified as not allowed to donate at ImmunoTek."

52. Plaintiff contends this allegation is false.

53. As stated above, a review of the full video will show the complete sequence of events and show that Plaintiff was forcefully groped and sexually assaulted.

54. The allegation that IBC "could not determine if the contact was intentional" is false and highly suspect.

55. IBC's Position Statement alleges that, "Charging Party called Manager Woodard on Saturday and wanted to know if she was going to be terminated, as she knew the no tolerance policy."

56. Plaintiff contends this allegation is misleading and at least partly false.

57. Plaintiff phoned Ms. Woodward on February 1st (Saturday was February 1st, i.e., the day of the incident).

58. Plaintiff denies that she called wanting to know if she was going to be terminated.

59. Plaintiff phoned Ms. Woodward to report that she had been sexually assaulted/harassed.

60. Plaintiff asked Ms. Woodward no questions about her own employment status.

61. IBC's Position Statement alleges that, "it was February 3—which was the effective date of termination. Additionally, Charging Party's allegation that the Donor "then groped me forcefully in the anal and vaginal area, i.e., the footage showed I was sexually

assaulted" is contrary to the evidence. Respondent's Confidential Exhibit No.1 clearly establishes that Charging Party immediately forcefully and physically grabbed the donor in the neck area."

62. Plaintiff contends this allegation is false and misleading.

64. Plaintiff maintains, as stated above, that on February 4, 2025, Plaintiff was asked to meet with Ms. Woodard and Quality Assurance Manager Jeremy Henderson.

65. During the meeting Ms. Woodard admitted that surveillance footage revealed that Person A first grazed his hand against Plaintiff's buttocks and then groped her forcefully in the anal and vaginal area, i.e., the footage showed Plaintiff was sexually assaulted.

66. Ms. Woodard went on to state, however, that Plaintiff should not have grabbed the donor by his shirt.

67. For this reason, allegedly, Plaintiff was terminated.

68. Notably, from the start, Plaintiff has openly admitted that she grabbed Person A by the shirt, and in the meeting on February 4th, Ms. Woodward referred to how Plaintiff grabbed him by the shirt.

69. It is false to suggest that she grabbed the donor "in the neck area" or "around the neck" as alleged.

70. Plaintiff's response was fully understandable, appropriate, and assertive.

71. She conveyed to the donor in a firm clear tone that his action was completely unacceptable.

72. Neither her action nor her statement was "threatening and violent" as alleged by the Respondent.

73. Moreover, Plaintiff adamantly maintains the evidence shows that she was sexually assaulted/harassed by the donor.

74. The effort by Respondent to project the blame of the situation on Plaintiff is shameful and exposes its retaliatory animus.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF TITLE VII - RETALIATION

75. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 74 above as if fully incorporated herein.

76. Defendant retaliated against Plaintiff for reporting the incident of sexual harassment.

77. The effect of the events described above deprived Plaintiff of equal employment opportunities in retaliation for exercising her federally protected rights.

78. The unlawful actions of the Defendant complained of above were intentional.

79. The unlawful employment practices described above were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

80. Plaintiff is entitled to protection from retaliation for making complaints or charges of discrimination pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.*

81. The acts of the Defendants constitute a willful intentional violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.,* and entitle Plaintiff to recovery of damages, both pecuniary and punitive in nature.

## COUNT II: VIOLATION OF TITLE VII - SEX DISCRIMINATION

82. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 81 above as if fully incorporated herein.

83. Defendant discriminated against Plaintiff because of her sex, female, based on the facts identified above which constitutes violation of Title VII of the Civil Rights Act of 1964.

84. Defendant were motivated to discriminate against Plaintiff because she is a female.

85. The unlawful actions of Defendant complaint of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff giving rise to to both compensatory and punitive damages under Title VII.

## COUNT III: VIOLATIONS OF TITLE VII – SEXUAL HARASSMENT

86. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 85 above as if fully incorporated herein.

87. By the actions described above, Plaintiff has been discriminated against in the terms and conditions of her employment on the basis of her sex, female.

88. By the actions described above, Defendants violated Title VII by allowing donor (Person A), to sexually harass Plaintiff in the workplace and by subjecting Plaintiff to a sexually hostile work environment.

89. Plaintiff has been harmed as a result of the Defendant's discrimination, and the Defendant is liable to the Plaintiff for the same.

90. The acts of the Defendants constitute a willful intentional violation of Title VII of the Civil Rights Act of 1964, as amended, and entitle Plaintiff to recovery of

damages.

## PRAYER FOR RELIEF

**WHEREFORE PREMISES CONSIDERED,** Plaintiff respectfully prays that upon hearing of this matter by a jury, the Plaintiff be granted the following relief in an amount to be determined by the jury:

1. Back wages;
2. Reinstatement or future pay in lieu of reinstatement;
3. Punitive damages;
4. Compensatory damages;
5. Attorney's fees;
6. Lost benefits;
7. Pre-judgement and post-judgment interest;
8. Costs and expenses; and
9. Such further relief as is deemed just and proper.

THIS the 4th day of February 2026.

        Respectfully submitted,

        Aliceson Anderson, Plaintiff

        By: /s/ Louis H. Watson, Jr.
            LOUIS H. WATSON, JR. (MB# 9053)
            JANE A. WATSON (MB#106877)
            Attorneys for Plaintiff

OF COUNSEL:

THE WATSON LAW FIRM, PLLC
1501 JACKSON AVE W STE 113 PMB 101
OXFORD MS 38655-2566
Telephone: (601) 968-0000
Facsimile: (601) 968-0010
louis@thewatsonlawfirm.com
jane@thewatsonlawfirm.com